```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PRIME SOURCE SERVICES, LLC,                   :
                        Plaintiff,            :
                                              :
v.                                            :        OPINION AND ORDER
                                              :
DELANCO HEALTHCARE-BELMONT AND                :        15 CV 6693 (VB)
PARKSIDE, LP; DELANCO HEALTHCARE,             :
LLC; DELANCO HEALTHCARE-BELMONT               :
& PARKSIDE REAL ESTATE, LP;                   :
CENTENNIAL VILLAGE; and BARRY                 :
FELDSCHER,                                    :
                        Defendants.           :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Prime Source Services, LLC, brings this diversity action against Delanco Healthcare-Belmont and Parkside, LP; Delanco Healthcare, LLC; Delanco Healthcare-Belmont & Parkside Real Estate, LP; Centennial Village; and Barry Feldscher, claiming breach of contract, fraud, and piercing the corporate veil.

Now pending is defendants' motion to dismiss the claims for fraud and piercing the corporate veil. (Doc. #24).

For the following reasons, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For purposes of deciding the pending motion, the Court accepts as true all well-pleaded allegations in the Second Amended Complaint ("SAC") and draws all reasonable inferences in plaintiff's favor.

Plaintiff is a limited liability company that "provides dietary and other services to nursing homes and adult care facilities." (SAC ¶ 32).

1

Delanco Healthcare, LLC ("DH"), is the sole general partner of both Delanco Healthcare-Belmont and Parkside, LP ("DHBP"), and Delanco Healthcare-Belmont and Parkside Real Estate, LP ("DHBP Real Estate"). Centennial Village is "a fictitious name registered to" DHBP. (Id. at ¶ 21). Barry Feldscher ("Feldscher") is the sole managing member of DH.

Until January 1, 2012, "[d]efendants collectively did business as, and otherwise operated" Centennial Village, a facility located in Philadelphia that "provid[es] continuing care to aging persons on an independent living, assisted living, residential care, and/or skilled nursing care basis." (Id. at ¶ 34).

On "various dates throughout the past six years beginning on or about May 1, 2010," defendants ordered food, medical equipment, and supplies for the Centennial Village facility using plaintiff's services. (SAC ¶ 36). It is undisputed defendants failed to pay plaintiff $167,459.62 of the amounts due and owing from the performance of plaintiff's services during that time.

On December 6, 2011, DH and DHBP entered into an "Operations Transfer Agreement" with an entity called "Centennial Healthcare, LLC," pursuant to which DH and DHBP transferred the operations of the Centennial Village nursing facility to Centennial Healthcare, LLC. (Aff. of Yitzchak Zelman in Opp. to Defs.' Motion ("Zelman Aff."), Ex. B).[1] Feldscher signed the Operations Transfer Agreement on behalf of DH and DHBP.

---

[1] In its opposition to the motion to dismiss, plaintiff notes the three agreements discussed herein – the December 6, 2011, Operations Transfer Agreement, the January 3, 2012, Confirmation of Sale, and the February 22, 2012, Settlement Agreement – were "inadvertently not attached" to the SAC. The Agreements have been submitted as exhibits to both plaintiff's motion to file a second amended complaint (Doc. #20) and its opposition to the instant motion. (Doc. #27). The Court may rely on these agreements because they were incorporated by reference in, and are "integral to," the SAC. Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002).

In addition, on January 3, 2012, Feldscher signed a "Confirmation of Sale" agreement on behalf of DH "as General Partner for" DHBP.  The Confirmation of Sale agreement "confirms that the nursing facility licensed as Centennial Village . . . has been transferred to Centennial Healthcare, LLC," and that the "effective date for the assumption of control by and transfer of the license for the facility to the new operator . . . is: Sunday, January 1, 2012."  (Zelman Aff., Ex. C).

On February 22, 2012 – more than seven weeks after the transfer of Centennial Village became effective – plaintiff and DHBP entered into a "Settlement Agreement and Releases" purporting to resolve the issue of defendants' unpaid bills for the services plaintiff provided to Centennial Village.  (Zelman Aff., Ex. A, "Settlement Agreement").   Feldscher signed the Settlement Agreement on behalf of DHBP "d/b/a Centennial Village," "By Its General Partner [DH]."  (Id. at 6).  In addition, the Settlement Agreement states, "Centennial is a skilled nursing facility that is wholly owned by [DHBP]."  (Id. at 1).

Plaintiff alleges it was "not aware that Barry Feldscher had transferred or sold the skilled nursing facility" when it entered into the Settlement Agreement, and it "would not have entered into the Settlement Agreement" had it known DHBP no longer owned and operated Centennial Village.  (SAC ¶¶ 74-75).

Pursuant to the Settlement Agreement, DHBP promised to pay plaintiff $100,000 in four installments of $25,000 each, to have been completed by July 31, 2012, in consideration for plaintiff waiving the remainder of its claims against defendants.  The Settlement Agreement further provided that plaintiff could pursue collection of the full $167,459.62 if DHBP failed to make the four installment payments on the dates specified.  As of the date of the SAC, plaintiff had only received two partial payments under the Settlement Agreement, totaling $15,000.

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Id. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.  Fraud

Plaintiff alleges Feldscher fraudulently induced it into entering the Settlement Agreement by claiming DHBP still wholly owned Centennial Village when he signed the Settlement Agreement, when in fact he had transferred the operations of Centennial Village two months earlier.

A.  Fraudulent Inducement

Defendants argue plaintiff's cause of action for fraud must be dismissed because it is duplicative of plaintiff's breach of contract claim.

The Court disagrees.

4

"[A] claim based on fraudulent inducement of a contract is separate and distinct from a breach of contract claim under New York law." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007).  See also First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 291–92 (1st Dep't 1999) ("[I]f a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim.").

"To state a claim for fraudulent inducement under New York law, a plaintiff must show: (1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 580 (2d Cir. 2005).

Here, plaintiff has stated a claim for fraudulent inducement.  Specifically, plaintiff alleges Feldscher represented that DHBP owned and operated Centennial Village at the time the parties entered into the Settlement Agreement, when in fact Feldscher knew – because he signed both the Settlement Agreement and the Operations Transfer Agreement – this was false.  Plaintiff alleges this misrepresentation was material because it related "to the assets owned by Delanco at the time," and therefore DHBP's ability to "meet[] its payment obligations under the Agreement."  (Pl. Br. at 12).  Plaintiff further alleges the misrepresentation was made to induce plaintiff into entering the Settlement Agreement, under which plaintiff forgave over $67,000 of debt owed to it, and agreed not to immediately initiate legal action against defendants.  Finally, plaintiff alleges it would not have entered into the Settlement Agreement had it known the truth,

and that this reliance injured it in an amount of $152,459.62 (the amount due and owing, less the $15,000 defendants have paid to date).

Accordingly, plaintiff's fraud claim is not duplicative of its breach of contract claim.

B.    Rule 9(b) Particularity

Defendants also argue plaintiff has failed to plead its fraud claim with the particularity required by Federal Rule of Civil Procedure 9(b) because plaintiff has not alleged acts that give rise to a strong inference of fraudulent intent.

The Court disagrees.

Pursuant to Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Nevertheless, "because we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations, plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (internal quotations and citations omitted).

A strong inference of fraudulent intent may be established "by alleging facts to show that defendants had both motive and opportunity to commit fraud." Id. (internal quotation omitted).

Plaintiff alleges Feldscher had a motive to commit fraud: so plaintiff would enter into the Settlement Agreement under which it would forgive over $67,000 of outstanding debt and "refrain[] from commencing immediate legal proceedings against Defendants."  (SAC ¶ 69). Plaintiff further alleges Feldscher had the opportunity to commit the fraud: he signed both the Operations Transfer Agreement and the Settlement Agreement.

Accordingly, plaintiff has sufficiently pleaded Feldscher had a strong inference of fraudulent intent.

III.     Piercing the Corporate Veil

Defendant also moves to dismiss plaintiff's cause of action for piercing the corporate veil pursuant to 12(b)(6) because New York does not recognize it as an independent cause of action.

Under New York law, "an attempt . . . to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993).

Accordingly, plaintiff's claim for piercing the corporate veil must be dismissed as a separate cause of action, but without prejudice to plaintiff being able to assert the facts and circumstances underlying that argument, should it become necessary later in this case.

## CONCLUSION

Defendants' motion to dismiss is (i) DENIED as to plaintiff's fraud claim, and (ii) GRANTED as to plaintiff's piercing the corporate veil claim to the extent it is alleged as an independent cause of action.

The Clerk is instructed to terminate the motion. (Doc. #24).

By a separate order, the Court will schedule an initial conference.

Dated: August 4, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge